**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BERNADETTE ARMSTRONG,

                                        Plaintiff,

          - v -                                                      No. 05-CV-1285
                                                                        (GLS/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

**APPEARANCES:**                                   **OF COUNSEL:**

COUGHLIN & GERHART, LLP                     JEFFREY A. BROWN, ESQ.
Attorneys for Plaintiff                             SCOT G. MILLER, ESQ.
20 Hawley Street
Post Office Box 2039
Binghamton, New York 12207

HON. GLENN T. SUDDABY                      WILLIAM H. PEASE, ESQ.
United States Attorney for the                 Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER[1]**

        Plaintiff Bernadette Armstrong ("Armstrong") brought this action pursuant to 42

U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.

Armstrong moves for a finding of disability and the Commissioner cross-moves for a

judgment on the pleadings.  Docket Nos. 6, 8.  For the reasons which follow, it is

_____

        [1]The matter was referred to the undersigned for Report and Recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

recommended that the Commissioner's decision be affirmed.

## I.  Procedural History

On November 13, 2003, Armstrong filed for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq.  T. 62-69.[2]  The application was initially denied.  Tr. at 28.  Armstrong requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Reana K. Sweeney on December 16, 2004.  T. 29-30, 244-307.  In a decision dated January 21, 2005,  the ALJ held that Armstrong was not entitled to disability benefits.  T. 25.  Armstrong filed a request for review with the Appeals Council.  T. 11, 240-43.  On June 3, 2005, the Appeals Council denied Armstrong's request, thus making the ALJ's findings the final decision of the Commissioner.  T. 7-9. This action followed.

## II.  Contentions

Armstrong contends that the ALJ erred when she failed to (1) determine properly that Armstrong's depression was a medically determinable impairment, (2) apply the treating physician's rule, (3) and satisfy her burden that significant jobs existed in the national economy that Armstrong could perform.  The Commissioner contends that there was substantial evidence in the record to support the determination that Armstrong was not disabled.

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 5.

### III.  Facts

Armstrong is currently forty-five years old and has a high school education with six

credits earned in college.  T. 96, 121, 273, .  Armstrong previously worked as a teacher's

aide, shoe salesperson, and caretaker at a nursing home.  T. 85-88, 104-07, 116, 275-79.

Armstrong alleges that she became disabled on January 14, 2002 due to failed back

syndrome and depression.  T. 115, 285.


### IV.  Standard of Review

#### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to

engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§

423(d)(1)(A) & 1382c(a)(3)(A) (2003).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he
> [or she] is not only unable to do his [or her] previous work but cannot,
> considering his [or her] age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which he [or
> she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] w

Id. at §§ 423(d)(2)(A) & 1382c(a)(3)(B) (2003).

The Commissioner uses a five step process, set forth in 20 C.F.R. §§ 404.1520 &

416.920, to evaluate disability insurance benefits and SSI claims:

> First, the [Commissioner] considers whether the claimant is currently engaged
> in substantial gainful activity.  If he [or she] is not, the [Commissioner] next
> considers whether the claimant has a "severe impairment" which significantly

*-3-*

limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520 & 416.920 (2003).

A plaintiff has the burden of establishing disability at the first four steps.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is any other work which the claimant could perform.  Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197,

*-4-*

229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (E.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).


## V.  Discussion

### A.  Medical Evidence

Armstrong was admitted to the hospital on January 27, 2002 by Drs. Kevin Gallagher and Emmanuel Guizano.  T. 143-54.  On January 30, 2002, Armstrong underwent surgery for disc herniation in the L5-S1 region.  T. 150-51.  At that time, Dr. Daniel Gaylon, the surgeon, stated that he was able to free the nerve roots and no nerve damage was visible.  T. 150-51.  Upon her discharge on January 31, 2002, Dr. Guizano found that Armstrong had significant and remarkable improvement.  T. 143.  She was prescribed Vicodin, Decadron, and Zantac and told to exercise twice a day by the physical therapist.  T. 143, 155-56.  On September 23, 2002, Dr. William Woodruff examined Armstrong's back and found that while there was a "small, nonenhancing focus within the inferomedial foramen," it did not affect the L5 or S1 roots.  T. 181.  He further noted that

the remainder of the examination was normal.  T. 181.

On March 19, 2003, Dr. Gaylon wrote a letter to Dr. Kevin Hastings, Jr., D.O., about Armstrong's condition and noted that she was taking Vioxx and Skelaxin to alleviate the pain in her back and leg.  T. 140.  Dr. Gaylon related to Dr. Hastings that in Armstrong's latest examination the day before, she was limited to $45°$ of forward flexion, straight-leg raising was mildly positive on the right to $90°$, she had fairly maintained strength and sensation of the right leg, and she used a cane to walk, though she only had a very slight limp.  T. 140.  Dr. Gaylon further noted that she could be labeled at a moderate level of permanent partial disability and that there was nothing more that could be done for her neurologically.  T. 140.

On May 15, 2003, Dr. Hastings evaluated Armstrong for her continued back and leg pain.  T. 162-66.  Armstrong told Dr. Hastings that she had constant pain in her back, pelvis, hips, legs, and feet and that the pain was exacerbated by any postural activities.  T. 162.  She also stated that she had problems with urinary incontinence.  T. 164.  Upon physical examination, Dr. Hastings noted Armstrong was grossly intact with no focal deficits, leg strengths were unequal with the right less than the left, she had limited range of motion in her thoracic and lumbosacral spine, but she was in no acute distress.  T. 164-65.  He diagnosed Armstrong, in part, with failed back syndrome, adjustment disorder with depressed/anxious mood, and secondary sleep disturbance.  T. 165.  Dr. Hastings recommended several forms of treatment, including medications and physical therapy.  T. 165-66.  On May 28, June 19, July 9 and December 8, 2003, Dr. Hastings and the physician's assistant in his office stated that the medications taken by Armstrong were

giving her interval relief.[3]  T. 167, 171-76.  On these occasions, it was also indicated that Armstrong was temporarily disabled up to 75% and that she could not work.  T. 167, 171-76.[4]

On January 6, 2004, Armstrong underwent a consultative orthopedic examination with Dr. John Cusick.  T. 182-86.  Dr. Cusick noted that Armstrong used a cane prescribed by her doctor[5] and that he was surprised that Armstrong was not treated by any other method than analgesics.[6]  T. 182.  Dr. Cusick indicated that Armstrong was able to cook, clean, do the laundry, shop, shower, dress herself, socialize with friends, and take care of children seven days a week.  T. 183.  Upon physical examination, he found that Armstrong's gait and station were normal, she could heel-and-toe walk without difficulty, she had difficulty squatting, no help was needed getting on and off the examination table, and she could rise from her chair without difficulty.  T. 183.  Dr. Cusick further found that she had full flexion, extension, and rotary movements bilaterally but with some discomfort at the extremes, there was no tenderness or spasm, a straight-leg raise test was positive at 10° bilaterally, though in the seated position it was 80° with hamstring discomfort but no

---

[3]Up until November 2003, Armstrong was attending physical therapy and on November 24, 2003, hydrotherapy sessions were authorized.  T. 169-76.

[4]Dr. Hastings and the physician's assistant also evaluated Armstrong from January through August 2004 and on March 19, 2004, it was noted that Armstrong's disability was permanent, though there was steady improvement in her condition until April 2004 when her therapy was discontinued.  See T. 226, 228, 230, 233, 235.

[5]According to the medical records, it does not seem that the cane was prescribed until April 5, 2004.  See T. 231.

[6]Analgesics are medications "capable of reducing or eliminating pain."  THE AMERICAN HERITAGE MED. DICTIONARY 40 (Revised ed. 2007).

back pain.  T. 184.  He concluded that Armstrong had moderate-to-marked limitations in areas that created strains on her back and right leg, including bending, lifting, and prolonged standing, walking, and stair climbing.  T. 185.

The same day, Armstrong underwent a psychiatric consultative examination with Dr. Carlton Aldrich.  T. 188-92.  Dr. Aldrich noted that Armstrong's attention and concentration were intact and that insight and judgement were good, although her affect was flat and depressed.  T. 189-90.  Dr. Aldrich concluded that Armstrong could follow, understand, and perform simple as well as complex tasks as long as they did not involve heavy physical labor, she had adequate attention and concentration, she appeared to be able to make appropriate decisions, she could deal with others and stress appropriately, and she evidenced moderate degrees of depression.  T. 191.  He diagnosed Armstrong with pain disorder and adjustment disorder with a moderate depressed mood.  T. 191.

On January 14, 2004, a state agency consultant completed a physical residual functional capacity (RFC) assessment of Armstrong.[7]  T. 70-75.  The consultant concluded that Armstrong could lift less ten pounds frequently and over ten pounds occasionally, sit for about six hours in an eight-hour day, stand and walk for about two hours in an eight-hour day, and occasionally perform postural activities.  T. 71.  It was further indicated that Armstrong did not have any manipulative, visual, communicative, nor environmental limitations and could push and pull without limitation.  T. 71-73.  The consultant also found that Dr. Cusick's medical source statement was consistent with the objective medical evidence.  T. 74.

_____

[7]The name of the state agency consultant is indecipherable.  See T. 75.

-8-

On January 27, 2004, Dr. Jane Stafford, a state agency consultant, completed a mental RFC assessment.  T. 193-95.  Dr. Stafford examined twenty categories of mental functioning and of those twenty, she found that Armstrong had moderate limitations in only three categories.  T. 193-94.  Dr. Stafford concluded that Armstrong was not significantly limited in any other categories.  T. 193-94.  Dr. Stafford also completed a psychiatric review technique the same day.  T. 197-209.  She found that a medically determinable impairment existed that did not fit the diagnostic criteria but that Armstrong had no restrictions on activities of daily living or difficulty in maintaining social relationships.  T. 197-209.  She further noted that while there were no episodes of deterioration, Armstrong had moderate difficulty in maintaining concentration, persistence, or pace.  T. 207.

On July 30, 2004, Dr. Hastings and the physician's assistant in his office completed an RFC questionnaire.  T. 215-17.  They stated that Armstrong's condition was disabling, she could not work, and her prognosis was poor.  T. 215.  They reported that Armstrong could sit for three hours but for only thirty minutes without interruption, stand for one hour in fifteen to thirty minute intervals, and walk for between zero and one hour in zero to fifteen minute intervals.  T. 216.  They also opined that Armstrong could occasionally lift up to ten pounds.  T. 216.  They further stated that Armstrong's pain was so persistent that it would distract from performance of daily activities and work, physical activity would increase pain to the extent that she would need bed rest and medication, and the medication she was taking prevented her from functioning on a productive level.  T. 217.

**B. Medically Determinable Impairment**

Armstrong contends that the ALJ erred in finding that her adjustment disorder with depressive mood was not a medically determinable impairment and, in so doing, failed to consider the opinion of Dr. Aldrich.  The Commissioner contends that the ALJ properly evaluated Armstrong's impairments.

As mentioned above, if a claimant is not engaging in substantial gainful activity, a determination must be made at step two of the sequential evaluation process  as to whether there exists a medically determinable physical or mental impairment.  20 C.F.R. § 404.1508; see also Social Security Ruling 96-4p, 1996 WL 374187, at *1-2, Titles II and XVI: Symptoms, Medically Determinable Physical and Mental Impairments, and Exceptional and Nonexertional Limitations (S.S.A. 1996).  An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . [that] consist[] of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms[.]"  20 C.F.R. § 404.1508.

If a medically determinable impairment exists, a decision must be rendered as to whether it is a severe impairment that significantly limits the physical or mental ability to do basic work activities.  See subsection IV(A) supra.  The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2003).  Basic work activities which are relevant for evaluating the severity of an impairment include:

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;

*-10-*

(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b) (2003); see Pickering v. Chater, 951 F. Supp. 418, 424

(S.D.N.Y.1996); see also Social Security Ruling 85-28, 1985 WL 56856, at *3-4, Titles II

and XVI: Medical Impairments That Are Not Severe (S.S.A. 1985).

 Age, education, and work experience are not evaluated in determining if the

impairment or combination of impairments are severe.  20 C.F.R. § 404.1520(c) (2003).

The severity analysis does no more than "screen out de minimis claims."  Dixon v. Shalala,

54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above the de minimi level,

then further analysis is warranted.  Id.  Where a claimant alleges multiple impairments, the

combined effects of all impairments must be considered, regardless of whether any

impairment, if considered separately, would be of sufficient severity.  20 C.F.R. §

404.1523 (2003); Dixon, 54 F.3d at 1031.

While the ALJ concluded that Armstrong's back pain and urinary incontinence were

medically determinable impairments, she did not find that Armstrong's depression was

such.[8]  T. 19.  At the hearing, Armstrong testified that she had never been treated by a

psychiatrist or psychologist for her alleged depression nor had she ever gone to any type

of counseling.  T. 280, 286.  Armstrong also stated that she was never hospitalized for the

condition nor had she ever received any form of treatment for depression.  T. 286-87.

Even though Dr. Hastings, her treating physician, indicated on several occasions that

---

[8]The ALJ found that only the back pain, and not the urinary incontinence, was a "severe" impairment.  T. 19.

Armstrong had anxiety/depression, he never treated her for any of the symptoms with medication nor did he recommend any form of therapy.[9]  See T. 173, 175, 177, 226, 228, 230.

Only state agency consultants, Drs. Aldrich and Stafford, found after brief examinations that Armstrong had adjustment disorder with depressed mood.  See T. 191, 200.  Whether these diagnoses constitute medically acceptable clinical and laboratory diagnostic techniques in order to render Armstrong's depression a medically determinable impairment is of no consequence since this alleged ailment is not severe and did not impede her ability to do basic work activities.

As previously noted, Dr. Stafford reported that Armstrong had no repeated episodes of deterioration and she had no limitations in activities of daily living nor in maintaining social functioning, although she had moderate difficulty in maintaining concentration, persistence, and pace.  T. 207.  Dr. Stafford also found that out of twenty categories of mental functioning, Armstrong was moderately limited in only three of the categories and not significantly limited in any of the others.  T. 193-94.  Additionally, Dr. Aldrich opined that Armstrong could follow, understand, and perform simple as well as complex tasks, she had adequate attention and concentration, she appeared to be able to make appropriate decisions, and she could relate to others and deal with stress appropriately.  T. 191.  Dr. Stafford concurred with Dr. Aldrich's opinion and stated that she would deny the claim.  T. 195.  Thus, even if the ALJ had determined that the depression was a medically determinable impairment, substantial evidence exists to

[9]Dr. Hastings is a doctor of osteopathic medicine and is neither a psychologist nor psychiatrist.

support a conclusion that the condition was not severe and did not preclude Armstrong

from doing basic work activities.   Therefore, it is recommended that the Commissioner's

findings in this regard be affirmed.


### C.  Treating Physician's Rule

Armstrong next contends that the ALJ did not give proper weight to the opinion of

her treating physician, Dr. Hastings, and instead improperly accorded significant weight to

the consultative examiner, Dr. Cusick, in determining Armstrong's RFC.

When evaluating a claim seeking disability benefits, factors to be considered

include objective medical facts, clinical findings, the treating physician's diagnoses,

subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd.,

948 F.2d 123, 126 (2d Cir. 1991).   Generally, more weight is given to a treating source.

Under the regulations, a treating source's opinion is entitled to controlling weight if well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

consistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2)

(2003); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be discounted,

the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight

to accord the physician's opinion: "(I) the frequency of examination and the length, nature,

and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the

opinion's consistency with the record as a whole; (iv) whether the opinion is from a

specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in

the record conflicts with the opinion of the treating physician, this opinion will not be

deemed controlling or conclusive, and the less consistent the opinion is, the less weight it

will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final

determination of disability and a claimant's inability to work rests with the Commissioner.

Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2003).

Here, the ALJ stated that Dr. Hastings' opinion that Armstrong's disability was at

75% and that she was unable to work was not supported by the evidence in the record nor

was it consistent with her treatment history or significant activities of daily living.  T. 20-21.

The ALJ noted that Dr. Hastings' assessments were basic annotations on progress notes

and were inconsistent with other observations noted.  T. 20.  The ALJ further found that

Dr. Hastings' RFC determination was not supported by the record.  T. 21.  The ALJ

concluded that these assessments were entitled to little weight.  T. 20-21.

In support of her conclusion, the ALJ relied on Dr. Cusick's RFC assessment, which

the ALJ found to be consistent with the evidence in the record.  T. 21.  Dr. Cusick noted

that Armstrong was able to cook, clean, do the laundry, shop, shower, dress herself,

socialize with friends, and take care of children seven days a week.  T. 183.  This was

corroborated by Armstrong's testimony and other records.  See T.  72, 74, 79-80, 96-98,

195, 268-69, 290, 295.  Over the year and few months Dr. Hastings treated Armstrong, he

rarely discussed Armstrong's ability to do activities of daily living, apart from three

instances where he noted that she had limited or poor activity tolerance.  See T. 167, 226,

228.  Apart from those three occasions, Dr. Hastings found that she had improved pain

relief.  T. 171, 173, 226, 233, 235, 237.  Even within Dr. Hastings and the physician's

assistant RFC assessment, Armstrong's ability to do daily activities was barely mentioned.

See T. 215-17.

Dr. Cusick further found that Armstrong's gait and station were normal, she could heel-and-toe walk without difficulty, she had full flexion, extension, and rotary movements bilaterally but with some discomfort at the extremes, and there was no tenderness or spasm.  T. 183-84.  He also noted that Armstrong needed no help getting on and off the examination table and she could rise from her chair without difficulty.  T. 183-84.  He indicated, however, that her straight-leg raise test was positive at 10° bilaterally, though in the seated position it was 80° with hamstring discomfort, no back pain, and she had difficulty squatting.  T. 183-84.  These findings were also corroborated in the record.  See T. 71-74, 140, 143, 164.  Dr. Hastings' evaluations do not describe in any helpful manner the state of Armstrong's physical condition.  Instead, Dr. Hastings' progress notes contain several lists with checkmarks placed in certain categories.  See T. 167-78, 226, 228, 230, 233, 235, 237, 239.  The only discernable limitation that arise from these notes is that Armstrong had weakness and exercise intolerance, although Dr. Hastings recommended that she attend physical therapy on several occasions.  T. 167, 169, 171, 173, 175, 177, 226, 228, 230, 233, 235.

Additionally, the limitations asserted in Dr. Hastings' and the physician's assistant's RFC findings are not entirely supported by the medical records.  They found that Armstrong could sit for three hours but only for thirty minutes without interruption, stand for one hour in fifteen to thirty minute intervals, and walk for between zero and one hour in zero to fifteen minute intervals.  T. 216.  They also opined that Armstrong could occasionally lift up to ten pounds, her pain was so persistent that it would distract from performance of daily activities and work, physical activity would increase pain to the extent that she would need bed rest and medication, and the medication she was taking

prevented her from functioning on a productive level.  T. 217.

Dr. Cusick noted that Armstrong had moderate-to-marked limitations in areas that created strains on her back and right leg, including bending, lifting, and prolonged standing, walking, and stair-climbing.  However, he did not state that Armstrong's limitations would have such a debilitating effect as described by Dr. Hastings and the physician's assistant.  T. 185.  Furthermore, another state agency consultant found that Armstrong could lift less than ten pounds frequently and over ten pounds occasionally, sit for six hours in an eight-hour day, stand and walk for two hours in an eight-hour day, and occasionally perform postural activities.  T. 71.  It was noted that Armstrong did not have any manipulative, visual, communicative, nor environmental limitations and could push and pull without limitation.  T. 71-73.  The consultant further stated that Dr. Cusick's medical source statement was consistent with the objective medical evidence even though Dr. Hastings' reports had been reviewed.  T. 74.

Thus, substantial evidence exists to support Dr. Cusick's RFC assessment. However, even if substantial evidence existed for the opinions of both Drs. Hastings and Cusick, the determination of which assessment should be followed is left to the factfinder, the ALJ.  See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) (citing, inter alia, Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988) for the proposition that "[w]here there is substantial evidence to support either position, the determination is one to be made by the factfinder").  Thus, based on objective medical findings in the record, the ALJ did not err when she accorded Dr. Hastings' opinion little weight in determining Armstrong's RFC. Accordingly, it is recommended that the Commissioner's finding in this regard be affirmed.

**D. RFC**

Armstrong contends that substantial evidence does not exist to support the finding that she retained the RFC to perform sedentary work that existed in significant numbers in the national economy.  Armstrong also contends that the ALJ improperly utilized the Medical Vocational Guidelines ("Grids") in finding her not disabled.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (E.D.N.Y. 1999); see 20 C.F.R.  §§ 404.1545, 416.945 (2003).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (E.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. § § 404.1545, 416.960 (2003).

Where, as here, a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. § 404.1560(c) (2003).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. § 404.1566(a) (2003).  The ALJ may apply the Grids or consult a

vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).

The Grids do not provide the exclusive framework for making a disability determination if a claimant suffers from non-Exceptional impairments that "significantly limit the range of work permitted by Exceptional limitations." Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604-05 (2d Cir. 1986) (citation omitted)).  Rather, the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Bapp, 802 F.2d at 604-05.  Work capacity is "significantly diminished" if there is a loss of work capacity that narrows the possible range of work available and deprives the claimant of a meaningful employment opportunity.  Id. at 605. Non-Exceptional impairments include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  20 C.F.R. § 404.1569a(c)(1)(vi) (2003).  The applicability of the grids should be considered on a case-by-case basis.  Bapp, 802 F.2d at 605.  However, the "mere existence of a non-Exceptional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 603.

In this case, the ALJ found that Armstrong was unable to perform her past relevant work but possessed the RFC to perform a significant range of sedentary work.  T. 20-21. Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is

often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are

required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a)

(2005).

> The ALJ concluded that Armstrong had the RFC for work activity involving

> lifting 10 pounds at a time and occasionally lifting and/or carrying articles like
> docket files, ledgers, and small tools, sitting for a total of 6 hours in an 8-hour
> workday, standing and/or walking for a total of 2 hours in an 8-hour workday,
> and pushing and/or pulling as much as she can lift and/or carry.  However, the
> work must allow the claimant to alternate positions every 2 hours for 15 minutes
> during normal breaks;  must not involve more than occasional   stooping,
> kneeling, crouching, climbing stairs, bilateral reaching overhead or bilateral use
> of foot/leg controls; must not involve crawling or climbing ropes, ladders or
> scaffolding; must not involve more than occasional exposure to extreme col,
> extreme humidity or concentrated exposure to water/liquids; must not require
> more than occasional use of vibrating objects/moving parts involving any of the
> four extremities and must not involve work in high exposed places or around
> fast moving machinery on the ground.  Additionally, because of occasional
> difficulties with tearfulness and depressed mood, the claimant is limited to
> working directly with the public only occasionally, but remains able to
> understand, remember and carry out simple instructions; make simple work-
> related decisions; respond appropriately to supervision, co-workers and ususal
> work situations and handle changes in routine work setting appropriately, all on
> a sustained and continuing basis.

T. 21-22.  Armstrong claims that the ALJ failed to credit the conclusions of Dr. Hastings

and the physician's assistant that Armstrong's condition was disabling and that she could

not work.  However, the regulations permitted the ALJ to rely on the opinions of state

agency consultative examiners where the treating source's opinion had been found

insufficient as long as they are supported by medical evidence in the record.  See 20

C.F.R. § 404.1527(f); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).  As

noted above, the ALJ's use of the opinions of the state agency consultants to determine

Armstrong's RFC was not in error as they were supported by substantial evidence in the

record.

Therefore, utilizing this RFC, the ALJ elicited the testimony of a vocational expert to determine whether other work existed in the national economy that Armstrong could perform.  The ALJ posed a hypothetical question to the vocational expert incorporating Armstrong's RFC limitations as described above.  See Juleszo v. Barnhart, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting Totz v. Sullivan, 961 F.2d 727, 730 (8th Cir. 1992) (holding that "the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments") (further citation omitted).  The vocational expert testified that, taking into account Armstrong's age, educational background, work experience, and RFC, she could work as a call-out operator, a job which existed in significant numbers in the national and local economies.  See T. 296-306.  In rendering this opinion, the vocational expert utilized the "Dictionary of Occupational Titles."  See 20 C.F.R. § 404.1560(b)(2) (2005).

The ALJ concluded that the testimony of the vocational expert, taken in conjunction with the Grids, directed a finding that Armstrong was not disabled.  Despite Armstrong's argument that the ALJ solely relied on the Grids in finding that she was not disabled, a review of the ALJ's decision reveals the contrary.  Accordingly, based on all the evidence in the record, the ALJ's decision was supported by substantial evidence and the ALJ did not err when she used the Grids and the testimony of a vocational expert to conclude that Armstrong was not disabled.

Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.

## VI.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Armstrong's motion for a finding of disability (Docket No. 6) be **DENIED**, and the Commissioner's cross-motion (Docket No. 8) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Date:  February 7, 2008
      Albany, New York

David R. Homer
United States Magistrate Judge

*-21-*