**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**BERNADETTE ARMSTRONG,**

                        **Plaintiff,**

           **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

                        **Defendant.**

**No. 05-CV-1285
(GLS/DRH)**

---

**APPEARANCES:**

**FOR THE PLAINTIFF:**

Coughlin, Gerhart Law Firm
19 Chenango Street
P.O. Box 2039
Binghamton, NY 13902-2039

**FOR THE DEFENDANT:**

Hon. Glen T. Suddaby
United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**OF COUNSEL:**

JEFFREY A. BROWN, ESQ.
SCOT G. MILLER, ESQ.

WILLIAM H. PEASE
Assistant United States Attorney

**Gary L. Sharpe
U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Pursuant to 42 U.S.C. § 405(g), Bernadette Armstrong ("Armstrong") challenges the denial of disability benefits by the Commissioner of Social Security. Pending are Armstrong's objections to Magistrate Judge David R. Homer's Report-Recommendation. (See Dkt. No. 11) Upon careful consideration of the arguments, the relevant parts of the record, and the applicable law, the court adopts the Report-Recommendation in its entirety.[1]

## II. Procedural History

Armstrong filed for disability benefits in November 2003, alleging disability arising out of failed back syndrome[2] and depression as of January 14, 2002. Her application was denied, and a hearing was conducted by an Administrative Law Judge (ALJ). On January 21, 2005, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

Armstrong filed a complaint in the Northern District of New York

---

[1] The Clerk is directed to append Judge Homer's Report-Recommendation to this decision, and familiarity is presumed. (See Dkt. No. 10)

[2] Failed back syndrome is best described as a multitude of symptoms that emerge after any number of surgeries or other treatments.

2

challenging the Commissioner's denial of benefits. (See Dkt. No. 1) On February 7, 2008, Judge Homer issued a report recommending that the Commissioner's decision be affirmed. (See Dkt. No. 10) On February 15th Armstrong filed her objections. (See Dkt. No. 11)

### III.  Discussion[3]

### A.    Standard of Review

By statute and rule, district courts are authorized to refer social security petitions to Magistrate Judges for proposed findings and recommendations regarding disposition. *See* 28 U.S.C. § 636(b)(1)(A) & (B); N.D.N.Y. R. 40.1, 72.3(d); General Order #18.

When a report and recommendation is filed, the parties have ten (10) days from receipt of the report to file specific, written objections to proposed findings and recommendations, and ten (10) days from the receipt of adversary objections to file responses. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y. R. 72.1(c). The local rules further require that the objections must specify the findings and recommendations which are the subject of the objections, and the

---

[3]The court adopts the factual summary in Judge Homer's Report-Recommendation. (See Dkt. No. 10)

3

substantive basis for these objections.  *See* N.D.N.Y. R. 72.1(c).  The district court must review *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); N.D.N.Y. R. 72.1(c).  "*De novo* review requires that the court give fresh consideration to those issues to which specific objections have been made.  It will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions."  *See Almonte v. New York State Div. of Parole*, No. 04-CV-484, 2006 WL 149049, at *5 (N.D.N.Y. Jan. 18, 2006) (citation and internal quotation marks omitted).

    If a party fails to object in a timely manner, it procedurally defaults and is not entitled to judicial review.  *See id.* at *3 .  Although failure to object or timely object constitutes procedural default, lack of specificity also gives rise to default.  *See id.* at *4.  The local rule requires that objections address specific findings and conclusions.  *See id.*  Therefore, a party that limits its specific objections to a part of a report's findings or recommendations procedurally defaults as to the remainder.  *See id.*  Frivolous or conclusory objections also fail to satisfy the specificity

4

requirement. *See id.* Furthermore, mere resubmission of the same papers and arguments as submitted to the magistrate judge fails to comply with the specificity requirement and also results in default. *See id.*

While a procedural default dissolves a party's right to judicial review, courts may nevertheless elect to conduct such a review. *Id.* at *5. This court has consistently done so under "a 'clearly erroneous' standard, and defines that phrase as follows: a report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights." *Id.* at *6. "Furthermore, the court will routinely identify issues which have been procedurally defaulted, and articulate the standard of review applied to all issues." *Id.*

**B.   Objections**

Armstrong proffers several specific objections to Judge Homer's report. The court applies a *de novo* standard of review to Armstrong's specific objections and reviews the remainder of the ALJ's decision for clear error.

### 1.   Medically Determinable Mental Impairment

Armstrong first objects that the ALJ committed error by holding that Armstrong's depression was not a medically determinable impairment.

5

She contends that the consultative report of Doctor Aldrich and the DDS physician assessment establishes that it was such an impairment.

She further objects to Judge Homer's ultimate conclusion that even were her depression a medically determinable impairment such impairment was of no consequence because "the condition was not severe and did not preclude Armstrong from doing basic work activities." Armstrong contends that the severe impairment of her back required the ALJ to consider all her impairments, regardless of severity, in formulating her residual functional capacity ("RFC"). As such, Armstrong argues that reversal is required because the ALJ did not discuss Dr. Aldrich's diagnosis of depressed mood in determining her RFC.

Armstrong is correct in noting that the ALJ was required to consider all medically determinable impairments, severe or not, in formulating her RFC, so long as she suffered from at least one severe impairment. *See* 20 C.F.R. § 404.1523*; De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984). Here, Armstrong's back injury was unquestionably held to be a severe impairment by the ALJ. As such, her depressed mood should have been considered in formulating her RFC if it was a medically determinable impairment.

6

However, the court need not reach the question of whether the ALJ erred in holding that Armstrong's depressed mood was not a medically determinable impairment. This is so because the ALJ clearly considered Armstrong's depression in formulating her RFC. The ALJ stated:

> Based on the evidence of record as a whole, the undersigned finds that the claimant retains the residual functional capacity for work activity that involves lifting 10 pounds at a time.... *Additionally, because of occasional difficulties with tearfulness and depressed mood, the claimant is limited to working directly with the public only occasionally*, but remains able to understand, remember and carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, co-workers and usual work situations and handle changes in a routine work setting appropriately, all on a sustained and continuing basis.

(Tr. 22) (emphasis added)

Admittedly, the ALJ did not explicitly cite to the medical report of Doctor Aldrich, however the above excerpt from the ALJ's decision is entirely consistent with Doctor Aldrich's findings. He indicated:

> [Armstrong] is able to follow and understand simple directions and instructions and perform simple rote tasks. She appears to have adequate attention and concentration for tasks but not experiencing excruciating back pain. It is believed she can consistently perform some simple tasks, so long as those tasks do not entail heavy physical labor. It is believed that [Armstrong] can learn new tasks again when not experiencing excruciating and chronic pain. It is believed that [Armstrong] can perform a number of complex tasks independently, again,

7

> when not in major pain. [Armstrong] did appear able to make appropriate decisions. She relates adequately with others and appears to deal appropriately with stress. It is noted [that Armstrong] is evidencing moderate degrees of depression which is understandable given her current situation in life. Her major restrict [sic] to entering the workforce would center round her reported constant pain stemming from her prior back injury.

(Tr. 191)

The court further notes that not only was Armstrong's depressed mood included in the ALJ's RFC formulation, but also in her consultation with the vocational expert. Upon being questioned about the effect of Armstrong's depressed mood by the ALJ, the vocational expert indicated that Armstrong still had occupational abilities as a call back operator. (Tr. 304)

Accordingly, to the extent that the ALJ may have been in error in holding that Armstrong's depressed mood was not a medically determinable impairment, the error was a harmless one.

### 2. Treating Physician Rule

Armstrong next objects that the ALJ erred in formulating her RFC by giving little weight to the opinion of Armstrong's treating physician, Dr. Hastings, and according greater weight to the opinion of the consultative examiner, Dr. Cusick. She contends that in doing so the ALJ "turned the

8

treating physician rule on its head," as Dr. Cusick only examined Armstrong once, while Dr. Hastings examined her many times and provided a detailed RFC assessment.[4]

Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Foxman v. Barnhart*, 157 Fed. Appx. 344, 346 (2d Cir. 2005). An "ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quotation marks and citation omitted). If the treating physician's opinion is not given "controlling weight," the ALJ must consider the entire record and give special assessment to several factors to determine how much weight to afford the opinion. *See* 20 C.F.R. § 404.1527(d)(2). The factors are: "the length of the treatment relationship and the frequency of examination" by

---

[4]The court notes that Armstrong has also objected to Judge Homer's application of the treating physician rule in his report-recommendation, in that he focused on the evidence supporting Doctor Cusick's opinion in discounting the opinion of Doctor Hastings. The court agrees that the focus of the inquiry should rather be whether Doctor Hastings' opinion was based on well supported medical and clinical diagnostic techniques and is consistent with other record evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Foxman v. Barnhart*, 157 Fed. Appx. 344, 346 (2d Cir. 2005).

9

the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Moreover, the "ultimate finding of whether a claimant is disabled and cannot work...[is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quotation marks and citation omitted). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." *Id*. Thus, a treating physician's disability assessment is not determinative. *See id.* Furthermore, where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. Hastings treatment records for Armstrong span from May of 2003 to August of 2004 and note either 75% partial or permanent disability. (Tr. 160-178, 224-239) His July 30, 2004 RFC questionnaire concluded that

10

Armstrong could: 1) sit for only thirty minutes at a time and for three hours total in a day, 2) stand for fifteen to thirty minutes at a time and for one hour total in a day, 3) walk for zero to fifteen minutes at a time up to an hour total in a day, and 4) lift ten pounds only occasionally.  (Tr. 215-17)  Doctor Hastings also opined that Armstrong would miss work more than three times a month.  *Id.*

In discounting Doctor Hastings' findings of disability and his RFC questionnaire, the ALJ stated that:

> Doctor Hasting's [sic] assessments are not supported by the other evidence of record, nor are they consistent with the claimant's treatment history or her fairly significant activities of daily living.  Further, Doctor Hasting's [sic] assessments are basically annotations on progress notes and are inconsistent with other observations noted.  Accordingly, Dr. Hasting's [sic] assessments are given little weight.

(Tr. 20)

These justifications for discounting the opinion of Dr. Hastings, despite his extended treatment relationship with Armstrong, are fully supported in the record.  First, as indicated by the ALJ, Dr. Hastings' treatment records do not address Armstrong's capacity for physical activity beyond occasional bullet points noting "limited activity tolerance."  (Tr. 160-178, 224-239)  Further, with few exceptions, these records indicate that

11

medication and osteopathic manipulative therapy was helping with Armstrong's pain management.  *Id.*  While Dr. Hastings' RFC questionnaire provides more concrete indications of Armstrong's physical limitations, it presents virtually no medical analysis, finds limited support in the record,[5] and is otherwise inconsistent with substantial record evidence.  (Tr. 215-17)

    For example, Dr. Cusick indicated that Armstrong cooked, cleaned, did laundry, shopped, dressed herself, and cared for her children daily.  (Tr. 183)  He noted that Armstrong complained of consistent pain in the lumbar region which radiated down her right leg, and, upon physical examination, raising her legs in the supine position caused back pain.  (Tr. 182, 184)  However, when seated Armstrong could raise her legs 80 degrees without back pain, only hamstring discomfort.  (Tr. 184)  In addition, full spinal flexion and extension was noted, with discomfort only at the extreme

---

[5]The only medical support the court can discern for Dr. Hastings' conclusions regarding Armstrong's physical abilities is a March 2003 letter drafted by Neurosurgeon Dr. Galyon. It states that Armstrong "is limited in terms of what she can do and I think in terms of formal assessment, she probably ought to be labeled at a moderate level of permanent partial disability, given her present circumstances." (Tr. 140) The ALJ dismissed this as not reflecting Armstrong's subsequent improvement. (Tr. 20-21) The court also notes that the statement is totally conclusory and internally inconsistent with Dr. Gaylon's indication that "[s]traight leg raising is mildly positive on the right at 90 degrees. She evidences fairly well maintained strength and sensation of the right leg itself. She walks with use of a cane, with a very slight limp." (Tr. 140)

ranges of motion.  *Id.*  Full range of motion was also noted in her hips, knees and ankles, despite some decrease of sensation in the right leg.  *Id.*  Her gait was normal, though she could not squat and used a cane.  (Tr. 183)  Ultimately, Dr. Cusick concluded that Armstrong had "[c]hronic back pain and neuropathy" which resulted in "moderate-to-marked limitation for activities that create serious and prolonged strain on the back and the right leg.[6]  (Tr. 185)  This includ[ed] bending and lifting as well as prolonged standing, walking, and stair climbing."  *Id.*  However, he did not indicate a belief that Armstrong was limited in her ability to sit.

Dr. Cusick's medical opinion and relation of Armstrong's daily activities is echoed in other record evidence to varying degrees.  Dr. Askin, an orthopedic surgeon, testified before the ALJ that he did not agree with Dr. Hastings' assessment.[7]  (Tr. 254)  He opined that, despite Armstrong's degenerative disc disease, she was capable of walking, sitting and

---

[6]Plaintiff points out that the Second Circuit has rejected consultative examiner's reports when they conclude that a claimant's condition is "mild or moderate" without additional information.  *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000).  However, Doctor Cusick's ultimate diagnosis is well supported by his extensive examination and is not in any way conclusory.  Therefore, it does not fall victim to the fatal defects noted in *Curry*.

[7]The court recognizes that the ALJ did not expressly rely on the testimony of Dr. Askin in her decision.  However, "[w]hen, as here, the evidence of record permits [the court] to glean the rationale of an ALJ's decision, we do not require that [she] have mentioned every item of testimony presented to [her]."  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

13

standing for 8 hours a day and carrying 25 pounds frequently. (Tr. 258-60)

In addition, Armstrong's own statements regarding her daily activities contradict Dr. Hastings' physical RFC assessment. In her disability application and before the ALJ, Armstrong indicated that she: 1) would shop for food once weekly for about an hour; 2) would prepare food or meals 3 times a week, which required a half an hour to an hour; 3) would clean dishes, iron and do laundry with help; 4) would address her own personal and grooming needs, sometimes with help; and 5) could walk up to a block before having to stop. (Tr. 76-84, 290-95) Many of these activities were also noted in the reports of Dr. Aldrich and the DDS physician. (Tr. 74, 190) Presented with similar record evidence, numerous courts have discounted a treating physician's opinion as inconsistent with a claimant's daily activities. *See, e.g., Mook v. Barnhart*, No. 02-2347, 2004 WL 955327, at *5 (D. Kan. Apr. 26, 2004); *Sherrod v. Barnhart*, No. Civ.A. 01-4731, 2002 WL 32350551, at *5 (E.D. Pa. July 31, 2002).

Ultimately, the ALJ was presented with a treating physician's opinion which concluded that Armstrong was unable to engage in any sort of meaningful activity without any insight into how that conclusion was reached. On the other end of the spectrum was the report of Doctor

14

Cusick, substantially supported by record evidence, and indicating on the basis of a well described and documented examination that Armstrong was physically capable of sedentary work. Faced with this disparity, the ALJ did not violate the treating physician rule by according greater weight to the opinion of Dr. Cusick and according little weight to the opinion of Dr. Hastings.

### 3. Other Work in the Economy and Medical-Vocational Guidelines

Armstrong next argues that the ALJ committed error by identifying only a single job at step five of the sequential evaluation process. She also alleges the ALJ directly applied the Medical-Vocational Guidelines, which was improper in light of her non-exertional impairment of depressed mood.

Initially, there is absolutely no authority for plaintiff's contention that the ALJ committed error by identifying only a single job Armstrong can perform. The variety of titles the claimant may hold is irrelevant. Rather the question is whether the job indicated exists in significant numbers, either in the claimant's region or in several other regions. *See* 20 C.F.R. § 404.1566. Here, the ALJ found that Armstrong could perform the duties of a call back operator and that 180 such jobs existed in the local economy,

15

4,700 jobs exist in the regional economy and 318,240 jobs exist in the country. This is clearly sufficient to find that the position exists in significant numbers under the regulations.

Armstrong's argument that the ALJ improperly used the Medical-Vocational Guidelines in concluding Armstrong was not disabled is also without merit. It is true that if Armstrong's depressed mood was a medically determinable non-exertional impairment the ALJ could not directly apply the Medical-Vocational Guidelines. *See* 20 C.F.R. § 404.1569a(d). However, it does not appear that the ALJ used the Guidelines in such a way. Rather her decision indicates that she used them as a framework, in conjunction with other record evidence and the vocational expert's testimony, to conclude that Armstrong was not under a disability. (Tr. 22-25) Such use of the Vocational Guidelines is entirely proper, as it is contemplated under 20 C.F.R. § 404.1569a(d).

## IV. <u>Conclusion</u>

Having addressed Armstrong's specific objections de novo, and otherwise finding no clear error in the proceedings below, the court declines to disturb the Commissioner's decision. As such, the court accepts and adopts the recommendation of Judge Homer in its entirety, for

the reasons stated above.

**WHEREFORE** it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and the complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

Date: May 27, 2008
Albany, New York

Gary L. Sharpe
U.S. District Judge

17